***********
The Defendant's motion to dismiss plaintiff's appeal is DENIED. The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the deputy commissioner hearing and in a Pre-Trial Agreement dated May 30, 2001 as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer.
3. The carrier liable on the risk is correctly named.
4. The employee's average weekly wage will be determined by Form 22 Wage Chart to be submitted by employer/carrier.
5. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1: Plaintiff's medical records
b. Stipulated Exhibit #2: Form 22 Wage Chart and ledger sheet
 ***********
Based upon the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff began working for Gordon Brothers Electrical Services, Inc. (hereinafter defendant-employer) as an electrical apprentice on or about February 26, 1999. His duties included helping to pull circuits and wires, and nailing electrical boxes.
2. On September 1, 1999, plaintiff was working pulling wires in a home owned by the mayor of Mint Hill. During one of the breaks from work, the plaintiff and Mr. Todd Gordon, owner of defendant-employer, began participating in horseplay, including getting into a wrestling match. Mr. Gordon picked up the plaintiff in a bear hug fashion, and the plaintiff attempted to do the same. While leaning back in an apparent attempt to lift Mr. Gordon off the ground, the plaintiff felt and heard a pop in his lower back. At the time Mr. Gordon weighed approximately 250 pounds, and plaintiff weighed approximately 140 pounds.
3. Plaintiff began to feel pain later on that day. He felt pain in his left buttocks and down the back of his leg and ankle. Plaintiff informed Mr. Gordon about it and went home to rest.
4. The following day plaintiff's lower back was still hurting, so he went to see his primary treating physician, Dr. Matthew Ryan at the Nalle Clinic. Dr. Ryan's medical notes from September 2, 1999 indicate that plaintiff had "apparently tried to lift his boss" when he "heard something pop in his back." The note goes on to recite that, "Later on, he fell from a ladder and states that he fell about six feet." Dr. Ryan took plaintiff out of work and prescribed Vicodin.
5. Plaintiff continued treatment with the Nalle Clinic with Dr. Agha. Plaintiff was kept out of work through Friday, September 10, 1999. By September 23, 1999, plaintiff was released to return to work with a restriction of avoiding heavy lifting. Plaintiff returned to work full-time for the defendant-employer; however, his symptoms persisted.
6. Dr. Agha referred plaintiff to Dr. Eric Laxer for an orthopedic evaluation which took place on December 14, 1999. Plaintiff testified at the hearing that he also injured his back when fell off a ladder at work on December 10, 1999 while working at a low-income housing development. Plaintiff reported to Mr. Preston McManus that he had fallen, and plaintiff claims to have told Dr. Laxer about the incident, but there is no indication in Dr. Laxer's notes that plaintiff fell from a ladder on December 10, 1999. In fact, Dr. Ryan's medical notes reflect plaintiff's reference to a ladder fall prior to December 10, 1999.
7. The medical notes from Dr. Laxer's initial examination of plaintiff mention the horseplay incident of September 1, 1999. Dr. Laxer diagnosed plaintiff with left L5-S1 radiculopathy and ordered a lumbar MRI, which was done December 18, 1999. On December 21, 1999, plaintiff returned to Dr. Laxer who reviewed plaintiff's MRI and diagnosed him with a left L5-S1 disc protrusion. At this point, Dr. Laxer presented plaintiff with the option of either continuing with conservative treatment or undergoing surgery. Additionally, plaintiff was restricted to lifting no more than twenty pounds for the next two weeks.
8. On January 31, 2000, plaintiff underwent an epidural steroid injection. This procedure did not alleviate his pain. Therefore, Dr. Laxer performed surgery on February 11, 2000. Plaintiff continued to receive follow up treatment from Dr. Laxer through May of 2000, during which time plaintiff began physical therapy and improved steadily.
9. On May 25, 2000, Dr. Laxer indicated that plaintiff had reached maximum medical improvement. Dr. Laxer gave plaintiff a 10% permanent partial impairment rating to his lumbar spine and work restrictions that he not lift more than fifty pounds, that he refrain from carrying cable on ladders, and that he refrain from bending or crawling.
10. After being released to return to work, plaintiff began working for Preston McManus, who had resigned from defendant-employer on June 1, 2000. Plaintiff was paid $320.00 per week. Plaintiff's employment with Mr. McManus ended in either September or October of 2000, and plaintiff remained unemployed until January 15, 2001, when he was hired by Caryl Mechanical of Monroe, North Carolina. At the time of the hearing, plaintiff was still employed in this position.
11. Todd Gordon testified that before the September 1, 1999 incident, practical jokes and pranks were played, but no horseplay was permitted, even though his employees participated in it. Mr. Gordon also testified that he did not engage in or encourage horseplay prior to the incident of September 1, 1999.
12. The more credible and convincing evidence came from the testimony of plaintiff and his witnesses Preston McManus and Michael Black as well as the defendant's witness, Jeremy Starnes. The plaintiff, Mr. McManus and Mr. Black testified that it was common practice for all the employees to participate in practical jokes, horseplay and general tomfoolery. They testified concerning instances of being riveted into a port-a-john, fecal material being placed in toolboxes, wrestling at various work sites, arm punching, slap boxing, shooting each other with wire nuts through PVC pipe and whipping each other with electrical wires. Each testified that they participated in the horseplay to varying degrees or witnessed other employees participating in varying degrees. All three testified that this sort of behavior was apparently condoned by Mr. Gordon because he was often the instigator and as a result, the other employees felt comfortable instigating horseplay on the other occasions.
13. On September 1, 1999, the plaintiff and his boss, Todd Gordon, were involved in horseplay when plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer, resulting in pain in plaintiff's back.
14. Plaintiff has not offered any expert testimony that establishes the cause for his L5-S1 back injury. Even though the horseplay incident of September 1, 1999 is mentioned in the medical records, none of plaintiff's treating physicians ever states that said incident is the cause of plaintiff's L5-S1 back injury, or the cause for his being taken out of work. Furthermore, there is insufficient evidence in the medical records to establish that the need for plaintiff's surgery resulted from the injury by accident of September 1, 1999.
15. The initial medical records of September 2, 1999 mention a ladder fall that allegedly occurred on the same day as the lifting incident of September 1, 1999; however, plaintiff testified that a ladder fall occurred on December 10, 1999. No clarifying expert testimony or other documentation was submitted by plaintiff to explain the conflict between plaintiff's testimony and what appears in the medical records. Therefore, the Full Commission declines to find that the plaintiff sustained an injury by accident at any time involving a fall from a ladder. As a result, it is unclear as to whether plaintiff's need for medical treatment and his inability to earn wages resulted from the lifting incident or the fall which allegedly occurred the same day, or at some point thereafter.
16. The Form 22 submitted by the parties does not cover a 52-week period; however, based upon calculations for the 26 6/7 weeks plaintiff worked prior to the injury, plaintiff's average weekly wage is $307.78, which would yield a compensation rate of $205.29.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. On September 1, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer, resulting in back pain. N.C.G.S. § 97-2(6).
2. Plaintiff has failed to carry his burden with respect to proving that the September 1, 1999 incident or some other occurrence resulted in plaintiff's need for medical treatment, and any resulting disability. N.C.G.S. §§ 97-25, 97-29.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and the same is hereby DENIED.
2. Each party shall pay its own costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER